UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80720-CIV-MARRA

ONUSS ORTAK NOKTA ULUSLARARASI
HABERLESME SISTEM SERVIS BILGISAYAR
YAZILIM DANISMANLIK VE DIS TICARET
LIMITED SIRKETI,

Plaintiff,

vs.

TERMINAL EXCHANGE, LLC et al.,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants Jonathan Lee, Kevin Slusher and Terminal Exchange, LLC's Renewed Motion for Summary Judgment (DE 125); Defendants American Bancard, LLC, Terminal Superstore, LLC and Sam Zeitz's Motion for Summary Judgment (DE 129) and Plaintiff Onuss Ortak Nokta Uluslararasi Haberlesme Sistem Servis Bilgisayar Yazilim Danismanlik ve Dis Ticaret Limited Sirketi's Motion for Summary Judgment on Defendants' Liability (DE 134). The motions are fully briefed and ripe for review. The Court conducted an oral argument on December 14, 2010. The Court has carefully considered the motions and is otherwise fully advised in the premises.

I. Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom, for the purpose of these motions, are as follows:

This dispute concerns an alleged contract for the sale of used Verifones by Plaintiff Onuss Ortak Nokta Uluslararasi Haberlesme Sistem Servis Bilgisayar Yazilim Danismanlik ve Dis Ticaret Limited Sirketi ("Plaintiff").  At issue in these motions is whether a contract was legally formed between Plaintiff and any of the Defendants and if so whether any or all of the Defendants are liable on the contract under various legal theories.

Defendant Terminal Superstore, LLC ("Terminal Superstore") was formed in 2003 and Terminal Exchange, LLC ("Terminal Exchange, LLC") was formed in July of 2008. (Records of Florida Department of State, Ex. 1, DE 95-1; Records of Florida Department of State, Ex. 3, DE 95-3; Sam Zeitz Dep. at 45, 51, DE 98.)  In April of 2004, Terminal Superstore, LLC registered the legally fictitious name Terminal Exchange with the Florida Department of State. (Application for Registration of Fictitious Name, Ex. A, DE 97; Records of Florida Department of State, Ex. 2, DE 95-2; Zeitz Dep. at 147-48, DE 98.)

Defendants Jonathan Lee and Kevin Slusher were employees of Terminal Superstore prior to the formation of Terminal Exchange, LLC.  Both are also members of Terminal Exchange, LLC, each owning a 35 percent interest. (Lee Aff. ¶¶ 4-5, DE 95-4; Slusher Aff. ¶¶ 5-6, DE 95-5.) Defendant Sam Zeitz has an ownership interest in Terminal Superstore.  (Zeitz Dep. at 39, DE 98.)

Hilmi Ozdemir was the main negotiator for Plaintiff regarding the shipment and sale of the Verifones at issue. (Hilmi Ozdemir Dep. at 10, DE 98-1.)  Various emails were sent between Mr. Ozdemir and Mr. Zeitz, the President of Defendant American Bancard, LLC ("American Bancard")  in which they discussed price, delivery and monthly installment payments regarding the Verifones. (Emails, Ex. B, DE 97.)  One of the emails from Mr. Zeitz stated in pertinent part:

2

> I will have [J]on [Lee] issue you a [purchase order] which binds us to the purchase. This is what is customarily used here in the US, however, we can also draft a full contract if you want but that would take the lawyers a few days and tomorrow is a holiday here.
>
> I will agree to the 200,000 and 100k per month provided you pay for the freight. I will have Jon pull strings to expedite the order through customs.

(July 3, 2008 email, Ex. B, DE 97.)

That same day, Mr. Ozdemir responded to Mr. Zeitz and told him that he is waiting for the purchase order "with all terms included today and the [ ] contract on Monday." (July 3, 2008 email, Ex. 34, DE 95-8.)

A purchase order, dated July 3, 2008 and issued by Mr. Lee, contained the name "Terminal Exchange" in the top lefthand corner, listed Plaintiff as the vendor, and identified "Terminal Exchange" as the entity to whom the items were to be shipped in Boca Raton, Florida.[1] The purchase order was for 7,500 Verifones in the total amount of $500,001.00, with a payment of $200,000 in seven days after delivery to the warehouse, $100,000 in 37 days, $100,000 in 67 days and $100,000 in 97 days. In addition, the purchase order stated "freight paid in full by shipper" and "shipment delivered by DHL Air to US Port of Miami." (Purchase Order, Ex. C, DE 97; Lee Aff. ¶ 24, DE 95-4.)

Plaintiff issued an invoice on July 4, 2008 with a billing and shipping address of Terminal Exchange in Boca Raton, Florida for 7,500 Verifones for a total price of $500,002.50. The payment terms were identical to the terms set forth in the above-referenced purchase order, except the invoice states payment is due "after delivery" as opposed to delivery to the warehouse. (Invoice, Ex. D, DE 97.)

---

[1] American Bancard was not listed as a party on the purchase order.

On July 7, 2008, Mr. Ozdemir sent an email to Mr. Lee and copied Mr. Zeitz. This email provided information about the freight company, requested "bank details," and asked whether Mr. Lee would send him the contract or whether he expected Plaintiff to prepare it and send it instead. The email also stated that shipment had begun July 4, 2008 and would arrive in Miami July 8, 2008. (July 7, 2008 email, Ex. 37, DE 95-8.) In response, Mr. Zeitz stated "[o]ur attorney will not be in until tomorrow but we have already forwarded it to her and I expect she will have it drafted for you tomorrow." (July 7, 2008 email, Ex. 40, DE 95-8.)

On July 8, 2008, Mr. Ozdemir sent a document entitled "purchase contract" to Mr. Zeitz. (Ozdemir Dep. at 109, DE 98-1; July 8, 2008 email, DE 41, attached to DE 95-8.) The purchase contract included a provision stating "[w]hile Risk to all Products pass on to TEX after loading all Products at Onus' warehouse in Istanbul/Turkey. Title to all Products passes on to TEX the moment Onus receives TEX's payment. . . ." In addition, the purchase contract stated that the first payment was due on July 16, 2008 and TEX would pay for transportation charges from Miami to TEX's warehouse. The purchase contract was never executed. (Purchase Contract, Ex. E, DE 97.)

On July 9, 2008, Mr. Lee emailed Mr. Ozdemir and stated they would not be able to pay for the Verifones until September and that he was in negotiations to buy a majority ownership in Terminal Exchange, LLC.[2] (Ozdemir Aff. ¶ 10, Ex. 1, DE 93-2; July 9, 2008 email, Ex. E, DE 93-2.) Next, on July 16, 2008, Mr. Zeitz emailed Mr. Ozdemir stating that Defendants would not be able to make the payment. (Ozdemir Aff. ¶ 11, DE 93-2; July 16, 2008 email, Ex. F, DE 93-

---

[2] Although the email does not refer to Terminal Exchange as an LLC, the Court assumes that the parties were discussing Terminal Exchange, LLC and not the fictitious name "Terminal Exchange."

2.)  A follow-up email on July 23, 2008 from Mr. Lee stated that personal funds were depleted in order for him and Mr. Slusher to purchase Terminal Exchange, LLC from Mr. Zeitz.[3] (Ozdemir Aff. ¶ 12, DE 93-2; July 23, 2008 email, Ex. G, DE 93-2.)

The units were not delivered to the Boca Raton, Florida warehouse. (Ozdemir Dep. at 143-44, DE 98-1.)   Plaintiff ultimately signed a power of attorney to have the goods imported by another entity, Airis ATM Technologies, which was listed as the "ultimate consignee" on the United States Customs and Border Protection document. (Ozdemir Dep. at 150, DE 98-1; Entry Summary Document, Ex. F, DE 97.)  That arrangement resulted in Plaintiff bearing the cost of import and customs. (Ozdemir Dep. at 158, DE 98-1.)   Plaintiff arranged to have the Verifones cleared through customs and stored in a Miami warehouse while it attempted to convince Defendants to accept the Verifones or find another buyer. (Ozdemir Aff. ¶ 13, DE 93-2.)

On August 1, 2008, the assets of Terminal Superstore were sold to Terminal Exchange, LLC including the rights to the d/b/a Terminal Exchange.[4]  Mr. Lee, Mr. Slusher and Terminal Superstore each own shares of Terminal Exchange, LLC. (Lee Dep. at 23-25, DE 95-7; Zeitz Dep. at 106, DE 98.)  Mr. Zeitz testified that Terminal Superstore's sole asset is its interest in Terminal Exchange and the note payment it collects from that entity. (Zeitz Dep. at 130-31, DE 98.)  Mr. Slusher testified that Terminal Superstore is an "empty shell of a company with its only asset being the note against Terminal Exchange," LLC and Terminal Superstore is buying

---

[3] Mr. Zeitz testified that he did not own an interest in Terminal Exchange, LLC. (Zeitz Dep. at 37, DE 98-2.)

[4] The Asset Purchase Agreement between Terminal Superstore and Terminal Exchange, LLC does not reflect the purchase of the Verifones at issue. (Lee Aff. ¶ 18, DE 104-1; Slusher Aff. ¶ 13, DE 104-2; Asset Purchase Agreement, Ex. 12, DE 104-3.)

Verifones, reselling them to American Bancard who is either giving them or selling them to their merchants. (Slusher Dep. at 91-92, Ex. 5, DE 135-1.)

After August 1, 2008, Terminal Exchange, LLC issued purchase orders to Plaintiff regarding the same Verifones at issue in the current dispute. (Lee Dep. at 84-86, Ex. 6, DE 135-1.)   In fact, Plaintiff was in continual contact with Mr. Lee in an attempt to negotiate a deal with Terminal Exchange, LLC to purchase the Verifones. (Ortac Aff. ¶ 19, DE 21.)  On or about February 13, 2009, representatives of Terminal Exchange, LLC visited the warehouse in Miami, where the Verifones were stored, to inspect them. (Ortac Aff. ¶ 20, DE 21.)

Mr. Zeitz testified that he never promoted the business of Terminal Exchange, LLC prior to its formation. (Zeitz Dep. at 76, DE 98.)  Mr. Lee and Mr. Slusher state that while dealing with Plaintiff and its agents, they never represented that they were acting on behalf of Terminal Exchange, LLC. (Lee Aff. ¶ 46, DE 104-1; Slusher Aff. ¶ 14, 104-2.)

Prior to events giving rise to the present dispute, in December of 2006, Mr. Lee sent an email to a number of suppliers that included a signature block identifying the d/b/a Terminal Exchange as an LLC. (December 22, 2006 email, Ex. 7, DE 135-1.)  Mr. Slusher sent emails with the same signature block. (July 11, 2007 email, Ex. 8, DE 135-1; Ex. 9, July 11, 2007 email, DE 135-1.)  One of Mr. Slusher's emails, which contained this particular signature block, was forwarded by Mr. Zeitz to Mr. Ozdemir. (July 11, 2007 email, Ex. 9, DE 135-1.)  In an email dated July 26, 2007, American Bancard's Chief Financial Officer, John Rody, instructed American Bancard's Controller, France N. Leonard, to make a wire transfer payment on a 2007 transaction to Plaintiff. (July 26, 2007 email, Ex. H, DE 135-2.)

In moving for summary judgment, Defendants American Bancard, Terminal Superstore

and Mr. Zeitz contend that (1) no contract was ever formed; (2) Plaintiff failed to perform a material condition precedent by failing to deliver the goods to the warehouse; (3) American Bancard is not a signatory to the contract; (4) Plaintiff cannot prevail on a veil-piercing theory and (5) Mr. Zeitz and American Bancard cannot be held liable as promoters.  Defendants Mr. Lee, Mr. Slusher and Terminal Exchange, LLC argue that (1) Mr. Lee and Mr. Slusher cannot be held personally liable; (2) Terminal Exchange, LLC did not ratify any contract and (3) no contract was ever formed.  Lastly, Plaintiff moves for summary judgment on the grounds that (1) all of the corporate Defendants are contractually liable; (2) Defendants breached the contract and (3) Mr. Slusher, Mr. Lee, Mr. Zeitz and American Bancard are liable as promoters of Terminal Exchange, LLC.

### II. Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the

nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III.  Discussion

A.  Existence of a Contract

In moving for summary judgment, Defendants contend that no contract between the parties was ever formed.  In support of this contention, Defendants point to record evidence showing that Plaintiff sent a draft purchase contract to Defendants subsequent to the issuance of the purchase order. According to Defendants, at the time, the parties were still negotiating, and Plaintiff's shipment of the goods and the existence of the purchase order does not form a

contract. Plaintiffs assert that the record evidence demonstrates that a contract was formed and all three corporate entities are liable on the contract.[5]

Contracts between merchants for the sale of goods are governed by Florida's Commercial Code. Florida Statute § 672.102.  The shipment of goods pursuant to a purchase order is an acceptance which creates a binding contract.  Florida Statute § 672.206(1)(b); see also Philip Schwartz, Inc. v. Gold Coast Graphics, Inc., 623 So. 2d 819, 820 (Fla. Dist. Ct. App. 1993) (purchase order was offer and performance was acceptance of offer and therefore a contract).

It is undisputed that a purchase order was sent to Plaintiff on July 3, 2008.  (Purchase Order, Ex. C, DE 97.)  It is also undisputed that an email sent by Plaintiff's representative to Mr. Lee, and copied to Mr. Zeitz on July 7, 2008, informed Defendants that shipment of the goods had begun on July 4, 2008 and would arrive in Miami on July 8, 2008.  (July 7, 2008 email, Ex. 37, attached to DE 95-8.)  These undisputed facts demonstrate the existence of a contract.  See id. at 820 (performance is acceptance of offer and thus a contract).  Although Defendants contend that the parties continued negotiations and point to record evidence of further unexecuted writings, those facts do not undo the contract that already came into existence.  Indeed, once an agreement has been reached and performance has commenced, additional terms that are proposed unilaterally in a later writing do not become part of the agreement.  Magliozzi v. P & T Container Svc. Co., Inc., 614 N.E.2d 690, 692 (Mass. App. Ct. 1993).[6]

---

[5] The Second Amended Complaint alleges breach of contract against Terminal Superstore and American Bancard (count one).  The breach of contract claim against Terminal Exchange, LLC is based on a ratification theory (count five). The Court will address the ratification theory infra.

[6] The Court will examine cases outside of the Florida jurisdiction to the extent they discuss provisions of the Uniform Commercial Code.

9

Alternatively, Plaintiff accepted the offer set forth in the purchase order by issuing the invoice on July 4, 2008.[7] (Invoice, Ex. D, DE 97.)  "Once a complete contract is reached through writings that do not vary in their terms, subsequent writings are immaterial." Rich Products Corp. v. Kemutec, Inc., 66 F. Supp. 2d 937, 963 (E.D. Wis. 1999); Tubelite v. Risica & Sons, Inc., 819 S.W.2d 801, 804 (Tex. 1991) ("additional terms contained in forms transmitted subsequent to contract formation do not become part of contract"); see also Graham Paper Co. v. Schottco Corp., 555 F.2d 193, 197 (8th Cir. 1977) (subsequent to purchaser's acceptance, a written acknowledgment sent by the seller which includes an additional term does not become part of the previously created contract).

Under either analysis, the Court concludes that a contract was formed with Terminal Superstore and summary judgment is granted on this basis for Plaintiff and denied for Defendants.  The Court is unable to determine, as a matter of law, whether a contract existed between Plaintiff and any other Defendant.

B.  Breach of Contract

Defendants move for summary judgment, claiming that they cannot be liable for any breach of contract because Plaintiff failed to perform a material condition precedent; i.e., delivery of the goods to the warehouse as required under the contract. (DE 129 at 11.)  Plaintiff asserts that Defendants breached the contract when they notified Plaintiff that they would withhold payment for the goods for two months and not assist in clearing the goods through customs. (DE

---

[7] The only difference between the purchase order and invoice is that the invoice states payment is due "after delivery" whereas the purchase order payment is due after delivery to the warehouse.  Defendants do not contend that this difference materially altered the offer. Nor is it clear that this the invoice intended anything different than the purchase order.  "After delivery" may have been shorthand for after delivery to the warehouse.

134 at 5.)

To constitute a material breach, a party's nonperformance must go to the essence of the contract. Covelli Family, L.P. v. ABG5, L.L.C., 977 So. 2d 749, 752 (Fla. Dist. Ct. App. 2008) quoting Beefy Trail, Inc. v. Beefy King Int'l, Inc., 267 So. 2d 853, 857 (Fla. Dist. Ct. App. 1972). "A party's 'failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach.'" Id. quoting Beefy Trail, 267 So. 2d at 857. Whether or not an alleged breach is material is a question of fact. Id.; see Beefy Trial, 267 So. 2d at 858 ("whether the plaintiff has presented clear and convincing evidence that the alleged breaches by the defendant are vital or material is a question of fact to be resolved by the trier of fact or jury"); Moore v. Chodorow, 925 So. 2d 457, 461 (Fla. Dist. Ct. App. 2006) (same). Based on this caselaw, the Court finds that it cannot make a ruling, at the summary judgment stage, whether Plaintiff materially breached the contract by failing to deliver the goods to the warehouse.[8] For the same reason, the Court cannot determine, as a matter of law, whether Defendant Terminal Superstore materially breached the contract by failing to make payment when due, or whether payment was excused by Plaintiff's alleged prior breach as to the delivery location.[9]

C. Liability of American Bancard

Defendants contend that because American Bancard was not a signatory to the contract, it

---

[8] Defendants rely on Florida Statute 672.507, stating that delivery is a prerequisite to payment. (DE 143 at 6.) However, if the Court ultimately finds that delivery to the Port of Miami was sufficient under the contract, then it will necessarily follow that Plaintiff did not breach the contract, requiring the contracting Defendants to have tendered payment.

[9] Because the Court is unable to determine whether a contractual relationship existed between Plaintiff and any other Defendant, it necessarily follows that the Court cannot determine whether any of the other Defendants breached the contract.

cannot be liable under it.  Furthermore, Defendants also contend that Plaintiff cannot prevail under a veil-piercing theory with respect to this Defendant. (DE 129 at 13-14.)  In response, Plaintiff states the emails exchanged between Plaintiff and Mr. Zeitz, as principal of American Bancard, supply important terms of the agreement.  Additionally, Plaintiff points to the following as evidence that American Bancard controlled the other corporate defendants: (1) Mr. Zeitz's email stated that he will have Mr. Lee issue a purchase order which "binds us to the purchase;" (2) a 2007 email where American Bancard made a wire transfer on a previous shipment to Plaintiff and (3) testimony from Mr. Slusher stating that (a) Terminal Superstore is an empty shell of a company with its only asset being a note against Terminal Exchange and (b) Terminal Superstore is buying the Verifones and selling them to American Bancard.  Significantly, Plaintiff states that "it is not by veil-piercing, but by its conduct, illustrated prolifically throughout the record, that American Bancard is contractually bound to [Plaintiff]." (DE 135 at 12.)

  At the summary judgment stage, the Court is not able to make the necessary findings required to determine whether American Bancard is liable under the contract.  For example, Mr. Zeitz's email stating that the purchase order will "bind us to the purchase" could on one hand support a finding that Mr. Zeitz intended for American Bancard to enter into a contractual relationship with Plaintiff.  On the other hand, in order to make this finding, the Court will have to delve into questions of intent and credibility, which are improper inquiries at the summary judgment stage.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("credibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts are jury functions."); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1531 (11th Cir.1987) (on a

summary judgment motion, the court may not weigh the credibility of the parties); Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1476 (11th Cir.1991) (intent is question of fact for the factfinder); Wadlington v. Continental Med. Svcs., Inc., 907 So.2d 631 (Fla. Dist. App. Ct. 2005) (intent is question for jury to decide). Thus, the Court cannot find, as a matter of law, that American Bancard is not liable on the contract.

D.  Promoter Liability of American Bancard, Mr. Zeitz, Mr. Lee and Mr. Slusher

Defendants seek a ruling that they cannot be held liable as promoters under Florida Statute § 608.4238 and Florida common law. Florida Statute § 608.4238 provides:

> All persons purporting to act as or on behalf of a limited liability company, having actual knowledge that there was no organization of a limited liability company under this chapter, are jointly and severally liable for all liabilities created while so acting except for any liability to any person who also had actual knowledge that there was no organization of a limited liability company.

Florida Statute § 608.4238.

Defendants note that Plaintiff was on constructive notice of the true identity of Terminal Exchange by virtue of the fictitious name registration of Terminal Superstore on or about April 19, 2004. (Application for Registration of Fictitious Name, Ex. A, DE 97.) Furthermore, Mr. Zeitz testified that he never promoted the business of Terminal Exchange prior to its formation. (Zeitz Dep. at 76.) Likewise, Mr. Lee and Mr. Slusher state that they never represented that they were acting on behalf of Terminal Exchange, LLC. (Lee Aff. ¶ 46; Slusher Aff. ¶ 14.) Plaintiff points to one of Mr. Slusher's emails, which contained a signature block of "Terminal Exchange LLC," that was forwarded by Mr. Zeitz to Mr. Ozdemir in 2007, a year before the parties entered into this contract. (July 11, 2007 email, Ex. 9, DE 135-1.) Plaintiff also relies upon other emails sent by Mr. Slusher and Mr. Lee that contained the signature block "Terminal Exchange, LLC."

Based on this evidence, the Court cannot determine, as a matter of law, whether promoter liability can be imposed.  Specifically, the Court is unable to ascertain what Defendants intended to do with the entity Terminal Exchange, LLC.  For example, did Defendants intend to form Terminal Exchange as a limited liability company from the time the name was used as a d/b/a? What was Defendants intent when they formed Terminal Exchange as a limited liability company?  What is the significance of the emails and would a factfinder credit Defendants' claim that the use of the signature block "Terminal Exchange, LLC" was nothing more than a computer glitch?  These questions all involve questions of intent and credibility and therefore cannot be resolved at the summary judgment stage. See supra Anderson; Rollins; Chanel; Wadlington.

E.  Ratification of Contract by Terminal Exchange, LLC

In moving for summary judgment, Defendant Terminal Exchange, LLC contends there is no evidence that either Mr. Lee or Mr. Slusher expressly adopted or ratified the contract. Specifically, it claims that simply entering into discussions with Plaintiff about buying the units, after the alleged breach occurred, cannot result in an adoption of the contract. Terminal Exchange, LLC also states that Mr. Lee engaged in the negotiations on behalf of Terminal Superstore, not Terminal Exchange, LLC. (DE 125 at 17-18.)   In response, Plaintiff states that Mr. Lee sought to negotiate the purchase of the Verifones and relies on several emails in which Mr. Lee told Plaintiff that he wanted to buy the Verifones and he was in the process of buying Mr. Zeitz out of his business. (DE 128 at 18-19.)  In reply, Terminal Exchange, LLC asserts that these negotiations by Mr. Lee did not relate to closing the original deal, but a new agreement to purchase some of the Verifones at issue.  (DE 130 at 7.)

Whether Mr. Lee sought to obtain the Verifones as an attempt to ratify the contact

between the parties or was seeking to form an entirely different contract between Plaintiff and the newly formed Terminal Exchange, LLC, requires factual determinations, including the weighing of the credibility of Mr. Lee regarding his intent during the negotiations with Plaintiff.  Based on the state of the record, the Court is unable to resolve this issue at the summary judgment stage.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendants Jonathan Lee, Kevin Slusher and Terminal Exchange, LLC's Renewed Motion for Summary Judgment (DE 125) is **DENIED**.

2) American Bancard, LLC, Terminal Superstore, LLC and Sam Zeitz's Motion for Summary Judgment (DE 129) is **DENIED.**

3) Plaintiff Onuss Ortak Nokta Uluslararasi Haberlesme Sistem Servis Bilgisayar Yazilim Danismanlik ve Dis Ticaret Limited Sirketi's Motion for Summary Judgment on Defendants' Liability (DE 134) is **GRANTED IN PART AND DENIED IN PART.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of December, 2010.

_____
KENNETH A. MARRA
United States District Judge